IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,723

In the Matter of JOHN BERNARD SULLIVAN,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed June 29, 2018. Indefinite suspension.

*Matthew J. Vogelsberg*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, and *Deborah L. Hughes*, Deputy Disciplinary Administrator, were on the amended formal complaint for the petitioner.

*Michael J. Studtmann*, of The Law Offices of Michael J. Studtmann, P.A., of Wichita, argued the cause, and *John Bernard Sullivan*, respondent, argued the cause pro se.

PER CURIAM: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, John Bernard Sullivan, of Austin, Texas, an attorney admitted to the practice of law in Kansas in 2004.

On July 1, 2016, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC), and on March 2, 2017, the office filed an amended formal complaint. The respondent filed an answer to the formal complaint on July 25, 2016, and filed an untimely answer to the amended formal complaint on June 27, 2017. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on July 11, 2017, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.1 (2018 Kan. S. Ct. R.

1

289) (competence); 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.4(a) (2018 Kan. S. Ct. R. 293) (communication); 1.8(f) (2018 Kan. S. Ct. R. 309) (accepting compensation for representation of client from one other than client); 1.16(a)(2) (2018 Kan. S. Ct. R. 333) (declining and terminating representation); 1.16(d) (terminating representation); 8.4(b) (2018 Kan. S. Ct. R. 381) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); 8.4(d) (engaging in conduct prejudicial to the administration of justice); Kansas Supreme Court Rule 203(c)(1) (2018 Kan. S. Ct. R. 234) (failure to timely report felony charges to the Disciplinary Administrator); and Kansas Supreme Court Rule 211(b) (2018 Kan. S. Ct. R. 251) (failure to file a timely answer in disciplinary proceeding).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"*Licensure*

"28.    . . . [T]he [Kansas Supreme] [C]ourt [temporarily] suspended the respondent's license to practice law in Kansas on February 10, 2014. The respondent's license remains suspended.

"29.    The respondent was previously admitted to practice law before the United States Tenth Circuit Court of Appeals (10th Circuit Court). On January 24, 2013, the 10th Circuit Court entered an order indefinitely suspending the respondent's license to practice before that court.

2

"30.    The respondent was previously admitted to practice law in the State of Oklahoma. On March 1, 2016, the Oklahoma Supreme Court entered an order disbarring the respondent from the practice of law in Oklahoma.

"*DA11754*

"31.    The respondent was appointed as counsel for J.L.P.-O. in a federal drug case. Throughout the representation, the respondent had a difficult relationship with J.L.P.-O.

"32.    J.L.P.-O. entered into a plea agreement. According to the respondent, J.L.P.-O. was required to waive his right to appeal as part of the plea agreement.

"33.    In September, 2012, the court sentenced J.L.P.-O. After sentencing, J.L.P.-O. instructed the respondent to file an appeal. According to the respondent, J.L.P.-O. also told the respondent he would be getting new counsel to handle the appeal after it was filed. The respondent advised J.L.P.-O. of his previous waiver, but J.L.P.-O. was adamant that his sentence be appealed.

"34.    The respondent advised J.L.P.-O. a notice of appeal needed to be filed before a certain deadline and suggested that the respondent file the notice of appeal even if he was not going to be appellate counsel. J.L.P.-O. concurred.

"35.    The respondent filed a notice of appeal in the 10th Circuit Court, which was docketed on September 24, 2012. The 10th Circuit Court Clerk sent a letter to the respondent that same day advising him of the various preliminary appellate deadlines. The respondent failed to comply with the appellate deadlines.

"36.    On October 10, 2012, the 10th Circuit Court Clerk sent a deficiency notice to the respondent, again directing the respondent to file appellate documents. The deficiency notice granted the respondent an extension of ten days. The respondent again failed to file any appellate documents.

3

"37.     On October 25, 2012, the 10th Circuit Court Clerk sent a third order to the respondent directing him to file the preliminary documents. The respondent again failed to file any appellate documents.

"38.     On November 16, 2012, the 10th Circuit Court Clerk sent a final order to the respondent directing him to comply with the court's orders or show cause why he should not be disciplined. The respondent did not reply.

"39.     On December 5, 2012, the 10th Circuit Court entered an order removing the respondent as counsel for J.L.P.-O. and appointing the federal public defender. The respondent was further ordered to provide the federal public defender with J.L.P.-O.'s files within ten days.

"40.     On December 6, 2012, the 10th Circuit Court entered a show cause order to the respondent directing him to respond in writing within twenty days as to why he should not be disciplined for inaction in J.L.P.-O.'s appeal. The respondent did not respond to the show cause order.

"41.     On January 24, 2013, the 10th Circuit Court entered an order indefinitely suspending the respondent from practicing law before the 10th Circuit Court. The order specified at least six months of the suspension must be served before the respondent could petition for reinstatement.

"42.     Also on January 24, 2013, the respondent sent a letter to the 10th Circuit Court Clerk. In the respondent's letter, he included his explanation for his failure to perfect the appeal. The letter, however, was not accepted for filing.

"43.     On July 29, 2013, the respondent petitioned the 10th Circuit Court for reinstatement of his license to practice before that court. On August 13, 2013, the 10th Circuit Court entered an order denying the respondent's application for reinstatement without prejudice. In the order, the court stated:

4

'This matter is before the court on the Petition for Reinstatement, filed by attorney John B. Sullivan (the "Petition"). Upon consideration, the Petition is denied without prejudice to renewal, as provided below.

'Mr. Sullivan has not demonstrated good cause for reinstatement. It does not appear that Mr. Sullivan has accepted responsibility for the procedural failures that occurred in Case No. 12-3251, *United States v. [J.L.P.-O.]*. Nor does it appear that Mr. Sullivan has taken any steps to appreciate the responsibilities of counsel to criminal defendants who appeal to this court. Our rules provide for a minimum level of representation required in direct criminal appeals, but the Petition does not express any understanding of these requirements.

'Further, if the procedural failures were a result at least in part of collateral issues in Mr. Sullivan's life during the time that Case No. 12-3251 was pending, Mr. Sullivan has not demonstrated what steps he has taken to ensure that collateral issues will not affect his representation of parties who appeal to this court in the future. Mr. Sullivan has provided no detailed information on the "great pains" he has gone to in this regard. The court expects to be informed on what specific actions Mr. Sullivan has taken to ensure that the problems he experienced in Case No. 12-3251 will not reoccur. Broad assurances that it will not happen again are not enough.

'We will allow Mr. Sullivan to file a renewed petition for reinstatement without regard to the one-year limitation on successive petitions for reinstatement. *See* 10th Cir. R., Addendum III, Plan for Disciplinary Enforcement § 10.3. Any renewed petition must remedy the deficiencies identified in this order.'

"44.    On August 13, 2013, the respondent filed a renewed petition for reinstatement. On August 21, 2013, the 10th Circuit Court again denied the respondent's request for reinstatement without prejudice. In that order, the court stated:

5

'This matter is before the court on John B. Sullivan's renewed Petition for Reinstatement.

'The renewed petition provide[s] additional details about Mr. Sullivan's efforts toward improving his appellate practice skills. But we are not persuaded that Mr. Sullivan fully understand[s] his obligations to a criminal defendant who appeals to this court.

'This court requires counsel for a criminal defendant to complete certain tasks after the notice of appeal is filed, regardless of whether counsel or the defendant files a notice and regardless of whether counsel was retained or appointed by the district court. It is not enough for counsel merely to ensure that a notice of appeal is filed. If counsel intends to file a motion to withdraw under Tenth Circuit Rule 46.4, counsel at a minimum must file an entry of appearance and a docketing statement. 10th Cir. R. 46.3(A). If counsel intends to continue with the appeal, then counsel must also file [a] transcript order form and (if counsel was appointed below) a designation of record. The failure to recognize and understand counsel's obligations to a criminal defendant on appeal is precisely what landed Mr. Sullivan into the disciplinary trouble in the first place.

'Additionally, the renewed petition implies that it is the obligation of the defendant or the family to ensure that the defendant has counsel on appeal. This is not necessarily so. If counsel was appointed by the district court, then it is counsel's responsibility to satisfy this court's preliminary filing requirements and to move in this court for new counsel to be appointed. Even if counsel was retained for the district court proceedings, counsel generally may not withdraw from representing the defendant in this court until the preliminary procedural steps described above are completed.

6

'We deny Mr. Sullivan's renewed petition without prejudice to renewal. Mr. Sullivan may file a second renewed petition for reinstatement in 45 days after the date of this order. Any renewed petition must provide specific assurances that Mr. Sullivan understands our procedural requirements for counsel to criminal defendants who appeal to this court, even if counsel intends to withdraw and not prosecute the appeal to its end. General assertions about reading and abiding [by] our rules will not suffice. Mr. Sullivan need not repeat statements made in prior petitions.'

"*DA12014*

"45.     On December 11, 2013, Clark County Undersheriff Daniel Knowles pulled the respondent over in Minneola, Kansas. Undersheriff Knowles recorded the following in his report:

'. . . There was only one occupant in the vehicle. I approached the car on the driver's side. I met with the driver and identified myself. I explained to the driver I had stopped him for going a little fast and asked for his driver's license. He told me that he did not have his driver's license. I asked where it was. He told me he did not know. He offered me credit cards with his name on it. I asked if he had proof of insurance for the vehicle. He looked and only found an[] expired insurance card. I returned two of his credit cards and wrote his name off the last one onto his expired insurance card. His credit card identified him as John Sullivan. Sullivan explained to me that he had a hearing with a client in Guymon, OK.

'While speaking with Sullivan I noticed he appeared to be under the influence of some sort of stimulant. There was sweat beaded across his for head [*sic*]. Sullivan's hands were shaking continuously. He could not sit still, his hands would drop down and rub the top of his legs, then to the side of his legs[,] then he would wipe his chest. Through my

7

training and experience in law enforcement I recognized and have seen this type of behavior with people using methamphetamine. I made a mental note and returned to my patrol car.

'I radioed Sullivan's name and DOB into dispatched to check his driver's license and for any wants or warrants. I radioed for Deputy Long to come and assist. I believed Mr. Sullivan was under the influence. Deputy Long arrived and I explained to him the situation.

'I returned to Mr. Sullivan and asked him to step out of his car. When he opened the door and got out of the car I smelled an odor of marijuana coming from inside the car. Sullivan complied and we went to the shoulder between our cars. I asked Sullivan to take his sunglasses off. He did and his eyes were glassy and bloodshot. I asked Sullivan if he took any medication. He told me he takes medication for attention deficit disorder. I asked if he was on any medication now. He told me no. I explained to him that he appeared to [*sic*] under the influence of some kind of stimulant. I asked Sullivan if he smoked marijuana. He told me no. I explained to Sullivan that I could smell the odor of marijuana coming from his car and that I was going to search the car. I asked if there were any confidential files in the car that was privileged information. Sullivan told me there was one file in his trunk and one in his book bag. I retrieved the files and left them with him. Deputy Long stood with Sullivan while I searched the car. On the passenger front seat were three packs of Camel cigarettes I opened [*sic*] center console and saw two crown royal [*sic*] bags. One had change in it. The other had a sandwich bag with dried green vegetation. Through my training and experience in law enforcement I recognized the vegetation as being marijuana. There was a Camel cigarette box that contained one hand rolled marijuana cigarette and a glass marijuana smoking pipe. There was a cellophane Camel cigarette package that contained a small Ziploc bag that contained white to clear crystals. I recognized those as being methamphetamine through my training and experience in law

8

enforcement. There were two glass smoking pipes with residue that I recognized as being pipes used to smoke methamphetamine.'

"46.    On December 12, 2013, Assistant Clark County Attorney charged the respondent with possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, driving while suspended as a second offense, no proof of liability insurance, and speeding.

"47.    On January 1, 2014, the respondent entered the Kansas Star Casino in Sumner County, Kansas, at around 2:00 a.m. As the respondent entered the gambling floor, he was approached by a Casino Security Officer and asked for his identification. As the respondent was removing his wallet from his coat pocket, the Casino Security Officer observed a baggie fall to the floor which contained a crystalline substance. The respondent quickly retrieved the baggie and put it back in his pocket. The Casino Security Officer believed the baggie contained narcotics.

"48.    The Casino Security Officer notified Agents with the Kansas Racing and Gaming Commission (hereinafter 'KRGC'). The KRGC Agents approached the respondent and asked him about the baggie. After some discussion, the respondent consented to a search of his coat. A KRGC Agent found the baggie in the respondent's coat pocket which contained what the KRGC Agent believed to be methamphetamine. The respondent was arrested on suspicion of narcotics possession.

"49.    On January 10, 2014, through counsel, the respondent self-reported alleged violations of the Kansas Rules of Professional Conduct to the disciplinary administrator. In the letter, the respondent informed the disciplinary administrator he had been charged with felony drug possession in Clark County, Kansas, and he expected to be charged with separate drug charges in Sumner County, Kansas.

"50.    On January 15, 2014, the Sumner County Attorney charged the respondent with possession of methamphetamine and possession of drug paraphernalia.

9

"51.    On January 25, 2014, the respondent was admitted to inpatient substance abuse treatment. The respondent remained in inpatient treatment until February 7, 2014. Thereafter, the respondent attended a six week outpatient program.

"52.    On February 7, 2014, the respondent and the disciplinary administrator filed a joint motion requesting the respondent's temporary suspension from the practice of law.

"53.    On February 10, 2014, the Kansas Supreme Court entered an order temporarily suspending the respondent from the practice of law in Kansas.

"54.    On March 20, 2014, in the Sumner County case, the respondent entered a guilty plea to a misdemeanor charge of possession of drug paraphernalia. In exchange for the respondent's plea, the felony charge of possession of methamphetamine was dismissed. The respondent was sentenced to six months in jail. The respondent's request for probation was granted and the respondent was not jailed. As a condition of probation, the respondent was ordered to successfully complete a drug treatment program. On April 10, 2014, an amended order of probation was filed which required the respondent to remain law-abiding, not possess or use illegal drugs, and report any contact with law enforcement to the court services officer by the following business day.

"55.    On April 26, 2014, an officer from the Wichita Police Department pulled the respondent over for failing to signal and for running a stop sign. When the officer approached the respondent, he observed a baggie containing what he believed to be narcotics hanging out of the respondent's jeans. The officer further observed the respondent attempt to move the baggie down the side of his car seat. The officer removed the respondent from his vehicle and patted him down. During the pat down, the officer located a baggie which contained what the officer believed to be methamphetamine. The respondent was arrested. While the respondent reported his arrest to his probation officer, revocation proceedings were not instituted against the respondent at that time.

"56.    On July 30, 2014, in the Clark County case, the respondent entered a plea to one count of misdemeanor possession of marijuana, one count of misdemeanor

10

possession of drug paraphernalia, and one count of speeding. In exchange, the felony charge of possession of methamphetamine and the other charges were dismissed. The court sentenced the respondent to twelve months in jail. Again, the respondent's request for probation was granted and the respondent did not go to jail. The respondent's conditions required him to remain law-abiding, report to a probation officer as directed, abstain from the use of alcohol and illegal drugs, and attend AA/NA meetings. Clark County requested that the respondent's probation be supervised through the Sumner County probation office.

"57.   On August 28, 2014, the Clark County probation plan was amended to include a condition that the respondent report any contact with law enforcement to the court services officer.

"58.   On September 30, 2014, the respondent was arrested in Sedgwick County, Kansas, on suspicion of trafficking contraband into a correctional facility.

"59.   On October 3, 2014, the respondent was arrested for failing to abide by conditions of probation. On November 13, 2014, the respondent appeared in Sumner County District Court for a probation revocation hearing. The court found that the respondent violated conditions of his probation. The court placed the respondent back on probation for an additional 12 months.

"60.   On April 6, 2015, the respondent was charged in Sedgwick County District Court with possession of methamphetamine, possession of drug paraphernalia, and driving while suspended, for the events which occurred on April 26, 2014.

"61.   On November 4, 2015, the respondent was arrested in Cooke County, Texas on suspicion of possession of methylene dioxymethamphetamine (MDMA), possession of heroin, and possession of methamphetamine. On May 16, 2016, a Cooke County, Texas Grand Jury indicted the respondent for possession of MDMA, possession of heroin, and possession of methamphetamine.

11

"62.     On June 13, 2016, the respondent entered guilty pleas in the Sedgwick County cases to three counts of misdemeanor possession of drug paraphernalia. The respondent was sentenced to probation for three years.

"63.     On January 11, 2017, in Cooke County, Texas, the court entered two orders of deferred adjudication, following the respondent's guilty pleas to possession of heroin and to possession of methamphetamine. In exchange, the remaining charge was dismissed. The Cooke County, Texas, court placed the respondent on community supervision for seven years.

"*DA12005*

"64.     D.P. hired the respondent in 2012 to represent him in a probation violation case in Sedgwick County, Kansas. At that time, D.P. was incarcerated in Norton, Kansas. The respondent received $750.00 from the trustee for the Kansas Department of Corrections. The fees were deposited directly into the respondent's operating account.

"65.     Unbeknownst to the respondent, D.P. was transferred from Norton to the El Dorado Correctional Facility on February 28, 2013. On June 30, 2013, the respondent wrote to D.P. requesting his release date and advising that the respondent would like to set a court date.

"66.     On August 5, 2013, D.P. wrote to the respondent and advised he would be incarcerated in El Dorado for the next four years. D.P. advised the respondent he no longer needed the respondent's legal services.

"67.     The respondent responded to D.P. that same day, explaining that he believed D.P. might have an argument for vacating the underlying conviction. The respondent also explained that arguing for such a remedy would cost D.P. an additional $750.00. The respondent further explained that he had already done some legal work on the case, but he would refund any unearned fees. The respondent told D.P. he would not be able to send the unearned fees to El Dorado, but would refund them to the person who

12

paid him. The respondent stated he did not remember who had paid him the original $750.00.

"68.     On September 18, 2013, D.P. again wrote the respondent requesting a refund of the attorney's fees. The respondent sent a second letter to D.P. dated August 5, 2013, but sent sometime after September 18, 2013, restating much of what the first letter explained. The respondent did not refund any unearned fees.

"69.     On October 27, 2013, D.P. sent a third letter to the respondent requesting a refund of the attorney's fees. The respondent did not reply.

"70.     D.P. sent a fourth letter to the respondent again requesting a refund. The respondent did not reply.

"71.     On January 12, 2014, D.P. filed a complaint with the disciplinary administrator against the respondent. In response to D.P.'s disciplinary complaint, the respondent admitted he received both D.P.'s third and fourth letters, but failed to read them. The respondent stated that he spent 2.9 billable hours of work performed at $150.00 per hour. The respondent refunded $315.00 to D.P. in April, 2014.

"*DA12034*

"72.     On July 20, 2013, R.Y. hired the respondent to represent him in two separate criminal cases in Harper County, Kansas. In one case, R.Y. was charged with possession with intent to distribute methamphetamine and possession of drug paraphernalia. In the other case, R.Y. was charged with rape, attempted rape, and aggravated intimidation of a witness.

"73.     R.Y. signed a fee contract agreeing to pay the respondent a total of $15,000. R.Y. was required to pay a 'minimum fee' of $5,000 before the respondent would begin representation. R.Y. agreed to pay $1,000.00 per month until the balance was paid in full. In the contract, the respondent did not indicate what the hourly charge would be.

13

"74.     The contract described the 'minimum fee' as the lowest amount that must be paid before representation would begin and that the 'minimum fee' was not a deposit on future legal services.

"75.     After the fee contract was executed, R.Y. was charged in a third case in Harper County, Kansas. In this case, . . . R.Y. was charged with possession of marijuana with intent to distribute, possession of marijuana, possession of drug paraphernalia, and failure to obtain a drug tax stamp. The respondent verbally agreed to represent R.Y. in the third case as well.

"76.     R.Y. and his mother D.Y. paid the respondent $4,000 up front and made another six payments of $1,000 for a total of $10,000. Payments ceased in January of 2014.

"77.     Between July 2013, and January 2014, the respondent billed R.Y. for 46.3 hours at $150.00 per hour. The respondent calculated his earned fees to be $7,144.50. This work included review of discovery, motions to modify bond conditions, and interviewing witnesses.

"78.     On October 8, 2013, the respondent represented R.Y. in a preliminary hearing in the first two cases. R.Y. was bound over on the first two cases and the third case was dismissed. On November 6, 2013, R.Y. was arraigned and entered not guilty pleas in both cases. The court scheduled a jury trial for April 7, 2014. The court directed that all pretrial motions be filed by February 6, 2014.

"79     While R.Y. was on bond awaiting trial, the respondent was arrested in Clark County, Kansas. *See* ¶¶ 42-43, above.

"80.     On December 27, 2013, the state filed a motion to revoke R.Y.'s bond in the rape case. The court issued a bench warrant and R.Y. was arrested.

14

"81.     After R.Y. was arrested on the bench warrant and awaiting trial in jail, the respondent was arrested for a second time, this time in Sumner County, Kansas. *See* ¶¶ 44-45, above.

"82.     On January 25, 2014, the respondent was admitted to inpatient substance abuse treatment. The respondent remained in inpatient treatment until February 7, 2014. While the respondent was in inpatient treatment, he did not communicate with R.Y. nor did he complete any trial preparation on behalf of R.Y. The respondent did not inform R.Y. that he would be unable to work on R.Y.'s defense.

"83.     At the respondent's request, the pretrial motions hearing set for February 6, 2014, was continued.

"84.     On February 10, 2014, as stated above, the court entered an order suspending the respondent's license to practice law in Kansas. *See* ¶ 50, above. On February 24, 2014, the respondent filed a motion to withdraw as counsel in both cases.

"85.     On February 25, 2014, R.Y. filed a *pro se* motion to continue and request for court appointed counsel. Michael C. Brown was appointed to represent R.Y. and the jury trial was continued at Mr. Brown's request.

"86.     On March 3, 2014, R.Y. filed a complaint against the respondent.

"87.     On April 14, 2014, the respondent, through his attorney, mailed a refund check in the amount of $2,855.00 to R.Y.'s mother. The refund check was apparently never cashed. After realizing the refund check had not been cashed, the respondent issued a second refund check to R.Y.'s mother on January 8, 2015.

"*DA12080*

"88.     On December 23, 2013, the respondent was hired by R.B. to represent his friend, N.W., in Reno County, Kansas. R.B. paid the respondent a $2,500.00 flat fee. The respondent did not obtain N.W.'s informed consent to the third-party payer

15

arrangement. N.W.'s case had been pending for over two years and the respondent was N.W.'s fourth attorney.

"89.     N.W. was charged with possession of methamphetamine with intent to distribute, possession of drug paraphernalia, and failure to obtain a Kansas drug tax stamp.

"90.     On January 2, 2014, the respondent made a request for production and inspection of discoverable materials to the State.

"91.     The court scheduled a status hearing for January 10, 2014. On January 10, 2014, the status conference was subsequently reset for January 17, 2014. On January 17, 2014, the status hearing was reset a second time to January 31, 2014.

"92.     On January 31, 2014, while the respondent was in inpatient treatment, the court held the status hearing and scheduled the case for trial on March 18, 2014. *See* ¶ 48, above.

"93.     While N.W.'s case was pending and scheduled for trial, on February 10, 2014, the court suspended the respondent's license to practice law. *See* ¶ 50, above. On February 24, 2014, the respondent filed a motion to withdraw as counsel. On that same date, the respondent notified N.W.[] of his temporary suspension by letter.

"94.     On March 7, 2014, the court permitted the respondent to withdraw and the trial setting was continued. Attorney Alice K. Osburn, who had previously represented N.W. in this same criminal case, was reappointed as subsequent counsel.

"95.     The respondent did not refund any unearned fees to R.B.

"96.     On April 16, 2014, R.B. filed a complaint with the disciplinary administrator's office. In response to the disciplinary complaint, the respondent asserted that he had performed 2.4 billable hours of legal work on N.W.'s case at a rate of $150.00

16

per hour. The respondent estimates he earned $360.00 in fees. The respondent offered to refund $2,140 to R.B.

"*DA12131*

"97.    On October 9, 2012, the respondent was hired to represent B.F. in two criminal cases pending in Sedgwick County, Kansas. B.F. paid the respondent $1,000.00, one-half of the agreed fee.

"98.    According to the respondent, the charges originated in municipal court but were eventually transferred to district court where they were recharged as felonies.

"99.    For a period of time, B.F. did not communicate with the respondent. On December 31, 2013, C.H., B.F.'s mother, informed the respondent that B.F. had been arrested on outstanding Sedgwick County warrants. After B.F. was arrested on the outstanding warrants, and because the cases ha[d] been refiled as felonies in district court, the respondent and C.H. renegotiated the fee and C.H. paid the respondent an additional $1,200.00.

"100.    There is a conflict with the evidence regarding how much the respondent received as attorney fees in this case. *See* ¶ 116 of the Formal Complaint and Transcript, pp. 82-83. However, the respondent's written response to the complaint filed by B.F. and C.H. includes the following statements which clearly establishes that the respondent received $2,200 for representing B.F.: '[B.F.] was agreeable with the amount [$2,000]. He came back to y [*sic*] office in early October in 2012 and paid half of the retainer ($1,000) and I agreed to allow him to pay the other half with payments over time.' 'I told him to just forget about the other $1,000 (one thousand dollars) we had agreed on earlier.' 'A short time after December 31st, 2013 [B.F.]'s mother returned to my office and offered to pay the entire retainer if I would take [B.F.]'s [*sic*] for a total of $1,200.00. . . . I agreed on the amount of $1200.00 and [C.H.] wrote me a check.'

"101.    On January 3, 2014, the respondent formally entered his appearance on both of B.F.'s Sedgwick County cases. Both cases were then set for jury trial on February 18, 2014.

"102.    On February 10, 2014, the Kansas Supreme Court entered an order temporarily suspending the respondent's license to practice law in Kansas. On February 18, 2014, the jury trial in both cases was continued. The trial date was reset for March 17, 2014.

"103.    On February 24, 2014, the respondent notified B.F. in writing that his license to practice law had been suspended. This was the final communication between B.F. and the respondent. That same day, the respondent filed motions to withdraw as B.F.'s counsel. The court permitted the respondent to withdraw on February 28, 2014.

"104.    When the Sedgwick County District Court convened for the jury trial setting on March 17, 2014, the case was continued again to permit B.F. time to seek new counsel.

"105.    On August 11, 2014, B.F. and C.H. filed a complaint against respondent with the disciplinary administrator. In response to the complaint, the respondent acknowledged that he is obligated to refund unearned fees in the amount of $1,810.00.

"*Conclusions of Law*

"106.    Based upon the findings of fact and the respondent's admissions in his answer to the amended formal complaint, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.8, KRPC 1.16, KRPC 8.4, Rule 203, and Rule 211, as detailed below.

"KRPC 1.1

"107.    Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and

18

preparation reasonably necessary for the representation.' The respondent failed to competently represent J.L.P.-O. The respondent failed to timely file appellate docketing documents that were required to perfect his client's appeal[.] Further, the respondent failed to respond to the 10th Circuit Court's notifications that action was required. Moreover, the 10th Circuit Court explicitly stated that the respondent did not have an appreciation of his obligations to a criminal defendant with an appeal pending in the 10th Circuit Court. The respondent's failure to understand those obligations and the rules of the court for counsel who are filing a notice of appeal, even if they intend to withdraw, demonstrates that he lacked the legal knowledge and preparation necessary to provide competent representation to J.L.P.-O. before the 10th Circuit Court. Because the respondent failed to demonstrate the necessary legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation of J.L.P.-O. before the 10th Circuit Court, the hearing panel concludes that the respondent violated KRPC 1.1.

"KRPC 1.3

"108.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent J.L.P.-O. In representing J.L.P.-O., the respondent failed to timely perfect the appeal and respond to the court's orders. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4

"109.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In DA12034, the respondent violated KRPC 1.4(a) when he failed to properly communicate with R.Y. and his mother, D.Y. When the respondent was admitted into inpatient substance abuse treatment, R.Y. was incarcerated awaiting trial on serious felon[y] charges. The respondent failed to inform his client that he was in inpatient treatment, that his license to practice law had been suspended, and he would be unable to defend him at trial. D.Y. went to great measures to contact the respondent.

19

Further, when D.Y. called the respondent's office, the respondent's receptionist told D.Y. that the respondent was out of the office and she would give him the message that she called, leading D.Y. to conclude that the respondent remained available to represent her son. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 1.8(f)

"110.    'A lawyer shall not accept compensation for representing a client from one other than the client' unless certain conditions are met. In this case, the respondent accepted compensation from R.B. to represent N.W. However, the respondent failed to obtain consent from N.W. prior to the representation. Because the respondent failed to comply with the precondition required by KRPC 1.8(f), the hearing panel concludes that the respondent violated KRPC 1.8(f).

"KRPC 1.16

"111.    KRPC 1.16 proscribes certain conduct relating to accepting representation and terminating representation. Specifically, KRPC 1.16(a)(2) provides that

'(a)     Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

. . . .

(2)     the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client.'

Paragraph (c) provides, '[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.' In his letter to the 10th Circuit Court Clerk, the respondent explained that he discontinued medications for mental health conditions. The respondent continued that, as a result, he

20

experienced mania in late 2012 which affected his ability to organize his thoughts and to sleep. Additionally, during that same time period, the respondent was actively using methamphetamine and other substances. Because of his mental health difficulties and his drug abuse, under KRPC 1.16(a)(2) the respondent was required to withdraw from the representation of J.L.P.-O. Further, KRPC 1.16(a)(2) prohibited the respondent from accepting the representation of R.Y. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.16(a)(2).

"112.   KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The respondent violated KRPC 1.16(d) when he failed to return unearned fees paid by R.B., B.F., and C.H. The hearing panel concludes that the respondent violated KRPC 1.16(d).

"KRPC 8.4(b)

"113.   'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the respondent repeatedly engaged in criminal conduct by possessing illegal substances. The respondent was convicted of many of the crimes. Additionally, in Texas, the respondent received a deferred adjudication on two felony offenses. The crimes which the respondent was convicted of and placed on deferred adjudication for adversely reflect on the respondent's fitness as a lawyer. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b).

21

"KRPC 8.4(d)

"114.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he repeatedly ignored the orders of the 10th Circuit Court in J.L.P.-O.'s case. Additionally, the respondent's criminal conduct and temporary suspension interfered with and caused delay in D.P., R.Y., N.W., and B.F.'s cases. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"Rule 203(c)(1)

"115.    Rule 203(c)(1) requires an attorney charged with a felony offense to report the charges to the disciplinary administrator's office within 14 days.

'. . . An attorney who has been charged with a felony crime (as hereinafter defined) . . . shall within 14 days inform the Disciplinary Administrator in writing of the charge. The attorney shall inform the Disciplinary Administrator of the disposition of the matter within 14 days of disposition. Notice of appeal does not stay the reporting required under this rule.'

The respondent failed to report the felony charges in Clark County for nearly a month after the charges were filed. Because the respondent failed to timely notify the disciplinary administrator's office of the felony charges in Clark County, the hearing panel concludes that the respondent violated Rule 203(c)(1).

"Rule 211(b)

"116.    The Kansas Supreme Court Rules require attorneys to file answers to formal complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

22

'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). The disciplinary administrator served the amended formal complaint in early March 2017. The respondent, however, did not file an answer to the amended formal complaint until late June 2017. Thus, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written answer to the amended formal complaint.

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"117.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"118.    *Duty Violated*. The respondent violated his duty to his clients to provide competent and diligent representation and adequate communication. Further, the respondent violated his duty to the legal system to comply with court orders. Finally, the respondent violated his duty to the legal profession and the public to refrain from engaging in criminal conduct.

"119.    *Mental State*. The respondent knowingly violated his duties.

"120.    *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to his clients, the legal profession, and the legal system.

23

"121.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"122.    *A Pattern of Misconduct*. The respondent engaged in a pattern of misconduct by repeatedly ignoring court orders from the 10th Circuit Court, by repeatedly engaging in criminal conduct, and by repeatedly failing to return unearned attorney fees.

"123.    *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.8, KRPC 1.16, KRPC 8.4, Kan. Sup. Ct. R. 203, and Kan. Sup. Ct. R. 211. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"124.    *Vulnerability of Victim*. The respondent's clients were individuals facing criminal charges, including serious criminal charges and were vulnerable to the respondent's misconduct.

"125.    *Illegal Conduct, Including that Involving the Use of Controlled Substances*. The respondent repeatedly engaged in criminal conduct by possessing illegal substances.

"126.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"127.    *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

"128.  *Absence of a Dishonest or Selfish Motive*. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"129.  *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from an addiction to drugs. It is clear that the respondent's addiction contributed to the misconduct.

"130.  *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct*. The respondent has made restitution to some of his clients and has offered to make restitution to remaining clients. Additionally, the respondent has obtained treatment for his drug addiction as well as his mental health conditions. Moreover, the respondent has made great strides to rehabilitate himself.

"131.  *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

"132.  *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent was an active and productive member of the bar of Wichita, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation.

"133.  *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"134.  In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

25

'5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

"*Recommendation*

"135.    The disciplinary administrator recommended that the respondent be disbarred. In the alternative, the disciplinary administrator argued that if the hearing panel determines that suspension is appropriate, then the disciplinary administrator recommended that the respondent's license to practice law be indefinitely suspended.

"136.    The respondent requested that he remain suspended. He would like [the] opportunity to petition the court for reinstatement in the future.

"137.    The respondent presented compelling mitigating evidence of recovery. Further, the respondent's acceptance of responsibility for the misconduct impressed the hearing panel. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be indefinitely suspended.

"138.    At the reinstatement hearing, the hearing panel recommends that the respondent be required to establish clear and convincing evidence that he is currently fit to practice law, that he has participated in mental health treatment as directed by the treatment professionals, that he has returned all unearned fees, that the respondent has reimbursed the Client Protection Fund for any claims paid to his clients on his behalf, that he has been discharged from criminal probation from all jurisdictions, and that the respondent has obtained a level of rehabilitation such that recurrence of the misconduct is unlikely. Finally, the hearing panel recommends that the respondent assist other attorneys with overcoming addiction.

"139.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

26

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2018 Kan. S. Ct. R. 251). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint and amended formal complaint, to which he filed answers, and adequate notice of the hearings before the panel and this court at which he appeared and was represented by counsel. The respondent did not file exceptions to the panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2018 Kan. S. Ct. R. 255). Furthermore, the evidence before the panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.1 (2018 Kan. S. Ct. R. 289) (competence); 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.4(a) (2018 Kan. S. Ct. R. 293) (communication); 1.8(f) (2018 Kan. S. Ct. R. 309) (accepting compensation for representation of client from one other than client); 1.16(a)(2) (2018 Kan. S. Ct. R. 333) (declining and terminating representation); 1.16(d) (terminating representation); 8.4(b) (2018 Kan. S. Ct. R. 381) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); 8.4(d) (engaging in conduct prejudicial to the administration of justice); Kansas Supreme Court Rule 203(c)(1) (2018 Kan. S. Ct. R. 234) (failure to timely report felony charges to the Disciplinary Administrator); and Kansas Supreme Court Rule 211(b) (2018 Kan. S. Ct. R. 251) (failure to file a timely

answer in disciplinary proceeding), and it supports the panel's conclusions of law. We therefore adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, Deputy Disciplinary Administrator Deborah L. Hughes recommended disbarment; or if the panel determined suspension was the appropriate discipline, she recommended indefinite suspension from the practice of law. The respondent requested suspension.

The panel unanimously recommended indefinite suspension. In addition, the panel recommended that if the respondent petitions for reinstatement, he must establish before a reinstatement panel, by clear and convincing evidence, that he: Is then fit to practice law, has participated in mental health treatment as directed by treatment professionals, has returned all unearned fees, has reimbursed the Client Protection Fund for any claims paid to his clients on his behalf, has been discharged from criminal probation in all jurisdictions, and has obtained a level of rehabilitation such that recurrence of the misconduct is unlikely (hereinafter referred to as Additional Reinstatement Conditions). Finally, the panel suggested that the respondent assist other attorneys with overcoming addiction.

At the hearing before this court, Deputy Disciplinary Administrator Matthew J. Vogelsberg recommended that the court adopt the hearing panel's recommendation of indefinite suspension. Further, in addition to the factors the respondent is required to establish at the reinstatement hearing under Supreme Court Rule 219(d) (2018 Kan. S. Ct. R. 264), the Deputy Disciplinary Administrator recommended the court require the respondent to establish the panel's recommended Additional Reinstatement Conditions.

The Deputy Disciplinary Administrator explained that the office of the Disciplinary Administrator had changed its recommendation from disbarment to indefinite suspension, relying in part on Standard 5.12 of the American Bar Association Standards for Imposing Lawyer Sanctions, which relates circumstances when suspension is generally appropriate for violations of a lawyer's duty to the public for failure to maintain personal integrity. Furthermore, the Deputy Disciplinary Administrator noted additional factors supporting suspension, rather than disbarment, to-wit: Respondent's candor at his disciplinary hearing; his continuing compliance with the conditions of his community supervision in Texas; and his continuing efforts to maintain his sobriety. But given Respondent's repeated criminal conduct, the Deputy Disciplinary Administrator recommended that the indefinite suspension commence on the date this court files its opinion. See Supreme Court Rule 219(a)(2) (2018 Kan. S. Ct. R. 264) ("An attorney indefinitely suspended by the Supreme Court is not eligible to petition for reinstatement for a minimum of 3 years from the date of suspension."). Respondent asked this court to impose indefinite suspension and did not dispute the Deputy Disciplinary Administrator's rationale for beginning the minimum 3-year suspension period on the date this opinion is filed.

This court agrees with the recommendations of the Deputy Disciplinary Administrator. Respondent's license to practice law in the state of Kansas should be indefinitely suspended; he will not be eligible for reinstatement for a minimum of 3 years from the date this opinion is filed; upon petitioning for reinstatement, he must establish the conditions set forth in Supreme Court Rule 219(d), as well as the Additional Reinstatement Conditions set forth above. For clarification, those conditions do not include the aspirational goal that the respondent assist other attorneys with overcoming addiction.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that John Bernard Sullivan be and is hereby disciplined by indefinite suspension in accordance with Supreme Court Rule 203(a)(2) (2018 Kan. S. Ct. R. 234), effective on the date of the filing of this decision.

IT IS FURTHER ORDERED that in the event the respondent seeks reinstatement, he shall be subject to a reinstatement hearing under Supreme Court Rule 219. At the reinstatement hearing, in addition to the factors he must establish under Supreme Court Rule 219(d), he will be required to establish the following additional conditions by clear and convincing evidence: That he is then fit to practice law; that he has participated in mental health treatment as directed by treatment professionals; that he has returned all unearned fees; that he has reimbursed the Client Protection Fund for any claims paid to his clients on his behalf; that he has been discharged from criminal probation in all jurisdictions; and that he has obtained a level of rehabilitation such that recurrence of the misconduct is unlikely. See Supreme Court Rule 203(a)(5).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.